UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TIMOTHY HARMON,

      Petitioner,

v.                                               Case No. 21-C-147

SARAH COOPER,

      Respondent.

## DECISION AND ORDER

Petitioner Timothy Harmon filed this petition for federal relief from his state conviction pursuant to 28 U.S.C. § 2254 on February 8, 2021. Harmon pled no contest to a reduced charge of second-degree reckless injury and was sentenced to a prison term of twelve and one-half years, to be served consecutively with Harmon's one and one-half year revocation on a previous case. Harmon asserts twin violations of his rights under the United States Constitution. First, Harmon argues the State breached its plea agreement with him by advocating the views of the victim regarding the plea agreement and sentencing to the circuit court. Second, Harmon contends the trial court relied on inaccurate information when pronouncing sentence. For the reasons that follow, the petition will be denied and the case dismissed.

## BACKGROUND

In January 2014, the State charged Harmon with one count of first-degree reckless injury, use of a dangerous weapon, and one count of possession of a firearm by a felon in connection with the shooting of R.A. in October 2013. *See* Case No. 2014CF000310 (Milwaukee County, Wisconsin). The shooting apparently stemmed from a dispute between R.A. and Harmon over the treatment of Harmon's sister, who was R.A.'s wife. Dkt. No. 8 at 2.

After initially intending to take the case to trial, Harmon agreed to plead no contest to a reduced charge of second-degree reckless injury. *Id*. at 2; Case No. 2014CF000310 (Milwaukee County, Wisconsin) (docket entries indicate the matter was initially set for a jury trial on October 12, 2015, before a motion to adjourn was granted). In exchange for the plea, the State agreed to dismiss the felon in possession charge and recommend an unspecified prison term, to run concurrent with Harmon's previous revocation. Dkt. No. 8 at 2–3.

At the sentencing hearing, the State placed the agreement on the record and informed the court that R.A. had declined to appear in person to make a statement but had authorized the prosecutor to relay his views. Dkt. No. 12 at 2. At the court's request, the State relayed that R.A. was displeased with the negotiated plea agreement because he felt the maximum sentence was too low and wanted the sentences to run consecutively rather than concurrently. *Id*. at 2–3; Dkt. No. 8 at 3. At this point, the court summoned counsel to chambers where it inquired as to the victim's specific views, particularly whether the victim declined to appear in person to make a statement out of disgust. Dkt. No. 6-5 at 3.

When the parties returned on the record, the State continued to relay its sentencing comments, including the views of the victim. *Id*. at 3–4. Once the State concluded its remarks, defense counsel began her remarks, but the court interrupted to call the victim personally. *Id*. at 4. The court's colloquy with the victim ranged from the victim's views on a fair sentence to the victim's preference on consecutive versus concurrent sentencing. *Id*. at 4–5. Finally, the victim relayed his version of the events in question, specifically mentioning the presence of his three-year-old daughter during the shooting. Dkt. No. 6-10 at 20:11–25. Following the end of the call and the conclusion of defense comments, Harmon allocuted. Dkt. No. 6-5 at 5. Before imposing sentence, the court stated that while it understood the deal reached between the parties as to charges

2

and sentencing, it believed the benefits of the deal for Harmon should end with the reduced charge. *Id*. The court concluded the facts of the case compelled imposition of the statutory maximum sentence, to run consecutive with Harmon's other prison term in accordance with the victim's wishes. *Id*.

Harmon subsequently filed a post-conviction motion to vacate the sentence on the same two grounds asserted in this petition, namely that the State breached the plea agreement and the trial court considered inaccurate information during sentencing. *Id*. The motion was denied by the trial court. *Id*. Harmon's sentencing was affirmed by the Wisconsin Court of Appeals and the Wisconsin Supreme Court denied his petition for review on August 20, 2020. *State v. Harmon*, 2019AP11-CR (Wis. Ct. App. Apr. 28, 2020); Dkt. No. 6-8.

## ANALYSIS

Harmon's petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254. Under AEDPA, a federal court may grant habeas relief only when a state court's decision on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" decisions from the Supreme Court, or was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d); *see also Woods v. Donald*, 575 U.S. 312, 315–16 (2015). A state court decision is "contrary to . . . clearly established Federal law" if the court did not apply the proper legal rule, or, in applying the proper legal rule, reached the opposite result as the Supreme Court on "materially indistinguishable" facts. *Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision is an "unreasonable application of . . . clearly established federal law" when the court applied Supreme Court precedent in "an objectively unreasonable manner." *Id.* This is, and was meant to be, an "intentionally" difficult standard to meet. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "To satisfy this high bar, a habeas petitioner

3

is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

**A. Breach of Plea Agreement**

Harmon asserts that the State breached the plea agreement negotiated between the parties by advocating the victim's position at sentencing. Dkt. No. 8 at 10. Claims that a plea agreement has been breached are governed by the United States Supreme Court's decision in *Santobello v. New York*, 404 U.S. 257 (1971). Plea agreements are, at bottom, contracts which the parties are entitled to have enforced. *Hartjes v. Endicott*, 456 F.3d 786, 790 (7th Cir. 2006) (citing *Santobello*, 404 U.S. at 262). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello*, 404 U.S. at 262. Less than explicit promises made by the State may be enforced, but there must be evidence to support the proposition that the State actually made a particular promise. *Hartjes*, 456 F.3d at 790 (citing *United States v. Williams*, 198 F.3d 988, 992 (7th Cir. 1999)). Any asserted breach must be material and substantial, not merely technical. *Id*. Without such a showing, the defendant is entitled to no relief. *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014).

Harmon argues the State breached the plea agreement by only giving "lip-service [sic]" to the deal that was consummated between the parties. Dkt. No. 8 at 10. The State undercut its sentencing recommendation, Harmon continues, by implicitly conveying to the trial court that it did not stand behind its recommendation. *Id*. at 11. The Wisconsin Court of Appeals rejected that assertion, however, explaining,

4

> [w]hen we review the entire sentencing proceeding in this case, it is clear that the only effect of the State's comments was to inform the circuit court of R.A.'s position on the plea and sentencing, not to distance the State from its own recommendation. Indeed, we observe that much of the focus on R.A.'s sentencing opinion was driven by the court itself, not the State, and we perceive the State to have been responding so as to fulfill its obligation of candor to the court and its questions.

Dkt. No. 6-5 at 7. That resolution is a reasonable application of *Santobello* and is not contrary to clearly established federal law.

Harmon also suggests that the State is or should be barred from conveying the wishes of the victim to the court when those wishes conflict with the State's recommendation under the terms of a plea agreement. Dkt. No. 8 at 12. Such a conveyance would, according to Harmon, violate the terms of the agreement. *Id*. The trial court and Court of Appeals, however, rejected that argument, holding that nothing in the State's presentation could be perceived as adopting the victim's position. Dkt. No. 6-5 at 7; *see also State v. Bokenyi*, 355 Wis. 2d 28, 54–57 (2014). That resolution too is reasonable and does not approach the standard for habeas relief. It undoubtedly does not violate clearly established federal law. Nothing in state or federal law prohibits the prosecutor from relaying the views of the victim. In sum, federal habeas relief is not available on this basis.

**B. Consideration of Inaccurate Information at Sentencing**

Harmon argues his due process rights were violated when the trial court considered inaccurate information at sentencing. Defendants have a due process right to be sentenced on the basis of accurate information. *United States v. Tucker*, 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *see also U.S. ex rel. Welch v. Lane*, 738 F.2d 863, 864 (7th Cir. 1984). This right, created to protect defendants from arbitrary government decisions, does not entitle defendants to a particular sentence but to a fair sentencing process. *Welch*, 738 F.2d at 864–

5

65. A fair sentencing process is defined as "a rational procedure of selecting a sentence based on relevant considerations and accurate information." *Id*. at 865.

Sentencing on the basis of inaccurate information does not automatically entitle a defendant to resentencing. *Promotor v. Pollard*, 628 F.3d 878, 888 (7th Cir. 2010); *see also Townsend*, 334 U.S. at 741. Instead, the inaccurate information must be materially untrue. *Townsend*, 334 U.S. at 741. Furthermore, the mere presence of inaccurate information in a sentencing transcript does not entitle a defendant to resentencing. Rather, the defendant must establish that the sentencing court relied on the misinformation, which is shown by "[giving] explicit attention to it, [founding] its sentence at least in part on it, or [giving] specific consideration to the misinformation before imposing sentence." *United States v. Miller*, 900 F.3d 509, 513 (7th Cir. 2018) (quoting *Pollard*, 628 F.3d at 888).

Harmon argues he was sentenced based on inaccurate information, namely that R.A.'s daughter was present during the shooting. Dkt. No. 8 at 13. Harmon, disputing the daughter's presence, moved for resentencing and produced three witnesses to support his argument that the information was false. Dkt. No. 6-5 at 8; Dkt. No. 8 at 13–15. Harmon introduced police reports at the post-conviction motion hearing in which two of the witnesses explicitly stated the affirmative absence of R.A.'s daughter, while the third witness "did not report seeing a child was present." Dkt. No. 6-5 at 9 n.3. The trial court denied his motion, concluding that while Harmon failed to meet his burden to show that the information was false, even if the court assumed for the purposes of the motion that the information was inaccurate, resentencing was not warranted. *Id*. at 8–9. The trial court reasoned that the precise location of R.A.'s daughter during the shooting was not significant and did not materially impact the sentence. *Id*. at 9. The Wisconsin Court of Appeals agreed that there was no basis for resentencing on this ground. *Id.* That conclusion cannot

6

Case 2:21-cv-00147-WCG   Filed 09/13/21   Page 6 of 7   Document 14

be overturned under the deferential standard that applies here. It is not unreasonable in light of the evidence presented. Accordingly, federal habeas relief is not available on this ground.

## CONCLUSION

For the reasons given above, Harmon is not entitled to federal habeas relief on his claims. His petition for writ of habeas corpus is therefore **DENIED**, and the Clerk is directed to enter judgment dismissing the case. A certificate of appealability will be **DENIED**. I do not believe that reasonable jurists would find that Harmon has made a substantial showing of the denial of a constitutional right.

Harmon is advised that the judgment entered by the Clerk is final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. *See* Fed. R. App. P. 3, 4. In the event Harmon decides to appeal, he should also request that the court of appeals issue a certificate of appealability. Fed. R. App. P. 22(b).

**SO ORDERED** at Green Bay, Wisconsin this 13th day of September, 2021.

s/ William C. Griesbach
William C. Griesbach
United States District Judge